This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

**vs.**              **NO. 31,898**

**MARTIN MOLINA,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Steven L. Bell, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Molina (Defendant) appeals his conviction for driving while intoxicated. In our notice of proposed summary disposition, we proposed to affirm. Defendant has filed a memorandum in opposition, which we have duly considered. As we are not persuaded by his arguments, we affirm.

**Expansion of the Scope of the Stop**

Defendant contends that the district court did not "correctly apply the law when the Defendant could not perform any of the field sobriety tests but the State Police officer decided to expand his search and acquire a blood test." [DS unnumbered page 10] In our notice of proposed summary disposition, we proposed to hold that this issue had not been preserved for appellate review, and that, if it had been preserved we would nevertheless find no error. Defendant responds that the argument was preserved.

We will assume, without deciding, that Defendant properly preserved this argument. Nevertheless, we find no error. Although it is true that under the New Mexico Constitution, a police officer cannot expand an investigatory stop beyond the initial reason for the stop in the absence of reasonable suspicion for further inquiries, *see State v. Leyva*, 2011-NMSC-009, ¶ 55, 149 N.M. 435, 250 P.3d 861, here, as we explained in our notice, the officer had a reasonable suspicion that Defendant was driving while intoxicated. Therefore, the blood test was not an improper expansion

of the scope of the stop. *See State v. Randy J.*, 2011-NMCA-105, ¶ 34, 150 N.M. 683, 265 P.3d 734 (holding that after a child was stopped for a traffic violation, the smell of marijuana provided reasonable suspicion to expand the scope of the stop to investigate whether the child was driving while intoxicated).

Defendant argues, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), that there was no reasonable suspicion that he was intoxicated because he provided a legitimate excuse for not being able to successfully complete the field sobriety tests. However, even before the officer asked Defendant to perform the tests, the officer observed facts that were sufficient to provide a reasonable suspicion that Defendant was driving while intoxicated. When Defendant was driving, he was weaving, did not maintain his lane of travel, and almost struck a curb. [DS unnumbered page 3] Once the officer stopped Defendant, he noticed that Defendant's breath smelled of alcohol and his eyes were bloodshot and watery. [DS unnumbered page 3] Defendant admitted to drinking a shot of alcohol and ingesting Vicodin. [DS unnumbered page 3] And Defendant became emotional and began to cry. [RP 25] As this evidence was sufficient to provide the officer with a reasonable suspicion that Defendant had been driving while impaired by alcohol, the blood alcohol test was not an illegal expansion of the scope of the original stop.

3

**Voir Dire of the Expert Regarding Reliability of the Blood Alcohol Test**

Defendant contends that the district court did not correctly apply the law when it did not allow Defendant to voir dire the State's lab analyst regarding the reliability of the blood alcohol test.  [DS unnumbered page 10]  We review the denial of a motion to voir dire a witness for an abuse of discretion.  *See State v. Purk*, 84 N.M. 668, 669, 506 P.2d 1215, 1216 (Ct. App. 1973).

"[I]t is error to admit expert testimony involving scientific knowledge unless the party offering such testimony first establishes the evidentiary reliability of the scientific knowledge." *State v. Torres*, 1999-NMSC-010, ¶ 24, 127 N.M. 20, 976 P.2d 20.  "The proponent of the scientific evidence is required to establish by a preponderance of the evidence that the testimony is reliable, and therefore admissible, but not that the testimony must be believed." *Andrews v. U.S. Steel Corp.*, 2011-NMCA-032, ¶ 14, 149 N.M. 461, 250 P.3d 887.  To determine whether the evidence is reliable, the district court considers a non-exclusive list of factors, including:  (1) whether the technique has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known potential rate of error in using a particular scientific technique and the existence and maintenance of standards controlling the technique's operation; (4) whether the technique has been generally accepted in the particular scientific field; and (5) whether the technique is

4

based upon well-recognized scientific principles such that it is adequate to support opinions based upon reasonable probability rather than conjecture. *Id.* As we discussed in our notice, Defendant has not explained what evidence was introduced by the State regarding the reliability of the test, such that he fails to demonstrate that the district court erred in concluding that the test was sufficiently reliable to be admitted. Furthermore, Defendant's claim of error on appeal is not that the State failed to meet this initial burden, but that the district court erred in refusing to permit Defendant to voir dire the analyst in order to rebut the State's assertion of reliability. [DS unnumbered page 10; MIO 6] However, as we indicated in our notice, Defendant fails to cite any authority demonstrating that the refusal to permit the type of questioning he wanted to engage in constitutes reversible error on appeal, and we therefore assume that no such authority exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Once the State met its threshold burden of demonstrating reliability, we do not see why Defendant could not simply cross-examine the witness in order to call into question the reliability or accuracy of these particular test results. We, accordingly, conclude that Defendant has failed to demonstrate error on appeal based on the district court's denial of his request to voir dire the witness.

**The Admission of Evidence of a Blood Sample Despite the Absence of Photographs**

Defendant contends that the district court did not correctly apply the law when it admitted evidence of a blood sample despite the fact that no photographs had been taken of the blood vials and packaging. [DS unnumbered page 10] In this Court's notice of proposed summary disposition, we proposed to conclude that this issue had not been preserved, and that even if it had, Defendant failed to demonstrate reversible error on this basis. In his memorandum in opposition, Defendant asserts that he preserved this argument. We will assume, without deciding, that the argument was preserved.

Nevertheless, as we stated in our notice, Defendant cites no authority to suggest that photographs must be taken of evidence before it may be admitted or otherwise discussed at trial. Accordingly, we conclude that no such authority exists, and we find no error on this basis. *See In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330.

Although Defendant attempts to reframe this issue in his memorandum in opposition as a more general claim that the blood was not properly authenticated, this was not the manner in which he originally presented the issue, and he has not moved to amend the docketing statement. Furthermore, as we discuss with respect to Defendant's claim of error regarding the chain of custody, the chain-of-custody evidence was sufficient to support a finding that the blood was Defendant's. *See* Rule 11-901(A) NMRA (stating that the requirement of authentication or identification "is

6

satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims").

**Refusal to Require Confrontation of Nurse Who Drew Defendant's Blood**

Defendant contends that the district court did not correctly apply the law when it admitted blood test results into evidence even though the nurse who drew Defendant's blood was not present for cross-examination. [DS unnumbered page 10] We will assume, without deciding, that this issue was preserved.

This Court has held that a person who draws a blood sample for a test whose results are introduced into evidence need not testify at trial. *State v. Nez*, 2010-NMCA-092, ¶ 16, 148 N.M. 914, 242 P.3d 482, *cert. denied*, 2010-NMCERT-009, 149 N.M. 49, 243 P.3d 481. Relying on statements by the United States Supreme Court in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), we stated that the fact that the person taking the sample does not testify does not violate the Confrontation Clause because "it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of [a] sample, or accuracy of [a] testing device, must appear in person as part of the prosecution's case." *Id.* (internal quotation marks omitted).

Additionally, Defendant fails to demonstrate that the Confrontation Clause has any application here. The Confrontation Clause bars the introduction of out-of-court

testimonial hearsay unless the [S]tate demonstrates both that the witness is unavailable and that the defendant had a prior opportunity to cross-examine the witness. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705. Here, however, there were no out-of-court testimonial statements made by the nurse, since she simply drew Defendant's blood. She did not test it herself, and apparently made no written or oral statements that were used against Defendant at trial. It appears that what Defendant argues is that the Confrontation Clause requires the State to *create* testimony by the nurse by bringing her into court even when it does not seek to use any statements by her, and then allow Defendant to cross-examine the nurse about that testimony. Defendant cites no authority for this proposition, and we assume that there is none. *See In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330. This Court has held that the Confrontation Clause does not require the State to create testimony regarding the scientific reliability and accuracy of a breath test machine, *see State v. Anaya*, No. 30,675, slip op. at 6-7 (N.M. Ct. App. June 7, 2012), and we conclude that the same rule applies here.

**Sufficiency of the Chain-of-Custody Evidence for the Blood Sample**

Defendant contends that the district court did not correctly apply the law when it admitted blood test results into evidence despite the fact that there had been a break in the chain of custody. [DS unnumbered pages 10-11] In our notice of proposed

summary disposition, we pointed out that the State is generally not required to prove the chain of custody in such detail that all possibility of tampering is excluded, and if there are questions regarding a possible gap in the chain of custody, those questions go to the weight of the evidence and not to its admissibility. *See State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896. Here, there was evidence that the police officer observed the blood sample being drawn by a registered nurse, and that the officer packaged the vials and took them back to his office, where they were placed on a secretary's desk to be sent to the Scientific Laboratory Division by mail. We proposed to hold that this was sufficient to establish a chain of custody. *See id.* ¶ 27 (finding a sufficient chain of custody based on testimony from the nurses who drew two blood samples, the police officer who took those samples to his office, and the criminalist who sent the samples to the FBI crime laboratory in Washington, D.C.).

Although Defendant argues in his memorandum in opposition that there was no evidence regarding what happened after the officer placed the vials on the secretary's desk, any such gap in the chain of custody would go to the weight of the evidence, not its admissibility. *See Peters*, 1997-NMCA-084, ¶ 26. Accordingly, the district court did not abuse its discretion in admitting the evidence.

Therefore, for the reasons stated in this opinion and in our notice of proposed summary disposition, we affirm.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**

10