2005-NMCA-074

113 P.3d 867

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Clara NOTAH–HUNTER, Defendant–**
**Appellant.**

No. 23,877.

Court of Appeals of New Mexico.

April 1, 2005.

Certiorari Denied,
Nos. 29,181,29,162,
June 6, 2005.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Appellee.

John Bigelow, Chief Public Defender, Sue A. Herrmann, Appellate Defender, Santa Fe, for Appellant.

## OPINION

CASTILLO, J.

{1} Defendant appeals from the district court's order, upon appeal from magistrate court, determining that Defendant was guilty of the offense of aggravated driving while under the influence of intoxicating liquor and affirming the magistrate court judgment. Defendant raises three issues on appeal: (1) whether the district court erred in finding that reasonable suspicion justified the officer in stopping Defendant's vehicle, (2) whether the district court erred in admitting the breath alcohol test results, and (3) whether the district court erred in finding that the breath test taken nearly ninety minutes after the stop justified the aggravated DWI finding. We affirm in part and reverse and remand for entry of judgment convicting Defendant of DWI.

## I. BACKGROUND

{2} Officer Whitman of the McKinley County Sheriff's Department stopped Defendant's vehicle in Thoreau, New Mexico, on the night of February 13, 2001. After administering two field sobriety tests, which Defendant was unable to perform, the Officer placed Defendant under arrest and took her to the McKinley County Detention Center for a breath test. Defendant's first sample indicated 0.17, and the last sample showed a concentration of 0.16. Defendant was charged and later convicted of per se aggravated DWI under NMSA 1978, § 66–8–102(D)(1) (1999). Additional pertinent facts are set out in our discussion of the issues.

## II. DISCUSSION

### A. Jurisdiction

{3} In its answer brief, the State asserts that this Court does not have jurisdiction to hear Defendant's appeal. Citing *State v. Brinkley*, 78 N.M. 39, 40, 428 P.2d 13, 14 (1967) (holding that where a notice of appeal is filed one day late, the Supreme Court is without jurisdiction to hear the ap-

pellant's appeal), the State first argues that Defendant's notice of appeal was filed one day late and that she has therefore "failed to perfect" her appeal. The New Mexico Supreme Court later modified this rule to "make it clear that timely filing of a notice of appeal is not an inflexible jurisdictional requirement in all cases." *Aragon v. Westside Jeep/Eagle*, 117 N.M. 720, 722, 876 P.2d 235, 237 (1994). In *State v. Duran*, 105 N.M. 231, 233, 731 P.2d 374, 376 (Ct.App.1986), this Court held that in criminal cases, "failure to file a timely notice of appeal . . . constitutes ineffective assistance of counsel *per se* " and that such an appeal would be considered timely. We therefore consider Defendant's appeal to be timely, despite the late filling.

■ {4} Relying on *State v. Ball*, the State also contends that this Court lacks jurisdiction because Defendant entered a guilty plea in the magistrate court. 104 N.M. 176, 185, 718 P.2d 686, 695 (1986) (affirming a district court's dismissal of de novo appeals from the metropolitan court on the basis that no right to appeal exists under the New Mexico Constitution when a defendant enters a guilty plea). Defendant has demonstrated that the magistrate court filed the judgment and sentence on the wrong form, thus giving the impression that Defendant pled guilty. The magistrate court acknowledged the error and filed an amended judgment and sentence reflecting that the guilty verdict was the result of a bench trial. Defendant properly moved to supplement the record on appeal to clarify the judgment, and that motion was granted. The record no longer supports the State's argument.

### B. Reasonable Suspicion to Stop Defendant

{5} Asserting that Officer Whitman lacked reasonable suspicion when he stopped her vehicle, Defendant appeals the district court's denial of her motion to suppress evidence. The district court's decision regarding a motion to suppress involves mixed questions of fact and law. *State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. We review the facts in the light most favorable to the prevailing party and defer to the district court's findings of fact that are

supported by substantial evidence. *Id.* The district court's application of law to the facts is reviewed de novo. *State v. Attaway*, 117 N.M. 141, 145–46, 870 P.2d 103, 107–08 (1994).

■ {6} Defendant argues that the district court's decision was not supported by substantial evidence. She testified that she was not speeding and was not driving in the middle of the road, and she contends that the Officer had no reason to stop her vehicle when he simply had a hunch that she was speeding. The Officer testified that "[t]here was light snow falling and the road surfaces were wet." While he acknowledged that the centerline was difficult to see, he stated that Defendant's car was "going faster than the posted speed limit of twenty-five" and was "traveling down the center of the roadway." In his opinion, a safe speed, given the existing road conditions, would have been between fifteen and twenty miles per hour. The Officer could not get a radar reading and unsuccessfully attempted to pace Defendant's vehicle. When Defendant slowed down, the Officer engaged his emergency lights, and Defendant stopped her vehicle.

{7} The district court, as the sole judge of the credibility of the witnesses and the weight to be given the evidence, was entitled to believe the Officer and to find, as the court did, that his observations were sufficient to warrant a belief that an offense was occurring. *See State v. Salas*, 1999–NMCA–099, ¶ 10, 127 N.M. 686, 986 P.2d 482. As we have previously held, a police officer may stop a vehicle if he has an objectively reasonable suspicion that the motorist has violated a traffic law. *State v. Vargas*, 120 N.M. 416, 418–19, 902 P.2d 571, 573–74 (Ct.App.1995). Viewing the evidence in the light most favorable to the prevailing party, we find that reasonable suspicion existed for the stop. *See State v. Ingram*, 1998–NMCA–177, ¶ 5, 126 N.M. 426, 970 P.2d 1151.

### C. Substantial Evidence for Conviction of Per Se Aggravated DWI

#### 1. Nexus

{8} Defendant next argues that the district court erred in convicting her of aggra-

vated DWI based on breath alcohol tests that were performed "nearly ninety minutes after the stop" without evidence relating the test results to the amount of alcohol in her system at the time she was driving. We clarify the evidence regarding timing. The record indicates that the arrest was at 10:32 p.m. and that the BAC machine logged the first result at 11:54 p.m. Thus, in our analysis, we will use one hour and twenty-two minutes as the lag time.

█ {9} This issue was preserved by Defendant in her closing argument when she directed the district court's attention to *State v. Baldwin*, 2001–NMCA–063, ¶ 2, 130 N.M. 705, 30 P.3d 394 (holding that if BAC results are marginal and are obtained after a significant lag in time, additional evidentiary requirements are necessary to relate the results to the amount of alcohol in the defendant's body at the time of driving).

█ {10} Defendant asserts, and the State does not contest, that the evidentiary nexus requirement outlined in *Baldwin* for per se DWI cases should also apply to the crime of per se aggravated DWI. We agree. Both crimes require a minimum alcohol concentration at the time of driving; and additionally, the Uniform Jury Instructions for both offenses require that the minimum alcohol concentration relate to the time the "defendant operated a motor vehicle." *See* UJI 14–4503, –4506 NMRA.

{11} New Mexico law has primarily dealt with the evidentiary nexus in per se DWI cases. *See State v. Martinez*, 2002–NMCA–043, 132 N.M. 101, 45 P.3d 41; *State v. Christmas*, 2002–NMCA–020, 131 N.M. 591, 40 P.3d 1035; *Baldwin*, 2001–NMCA–063, 130 N.M. 705, 30 P.3d 394; *State v. Cavanaugh*, 116 N.M. 826, 867 P.2d 1208 (Ct.App. 1993). *But see State v. Burke*, 1999–NMCA–031, ¶ 2, 126 N.M. 712, 974 P.2d 1169 (reversing an aggravated DWI conviction where the state conceded absence of relation-back evidence supporting BAC results), *overruled on other grounds by State v. Torres*, 1999–NMSC–010, ¶ 20, 127 N.M. 20, 976 P.2d 20. As we noted in *Baldwin*, "[t]iming is an essential element of the crime[,]" requiring the state to demonstrate a nexus between a borderline BAC and the time that the " 'de-

fendant operated a motor vehicle.' " 2001–NMCA–063, ¶ 8, 130 N.M. 705, 30 P.3d 394 (quoting UJI 14–4503). Establishing a nexus is important because the "longer the delay between the time of [the] incident and [the] sample collection, the more difficult it becomes, scientifically, to draw reasonable inferences from one 'data point[ ]' back to the 'driving' time." *Id.* ¶ 17 (internal quotation marks and citation omitted).

█ {12} We find this reasoning equally applicable to per se aggravated DWI. Therefore, when a defendant is charged with per se aggravated DWI on the basis of a BAC result of 0.16 or marginally higher that is obtained after a significant lag in time, the State must demonstrate a sufficient nexus between the BAC result and the driver's alcohol content at the time of driving. This can be accomplished by introducing additional corroborating evidence. As in *Baldwin*, we do not attempt to provide a comprehensive list of the forms such evidence may take. *Id.* ¶ 2. Certainly, properly admitted "expert testimony relating the test result back in time to the time of driving" would be included. *Id.* In *Baldwin*, we commented that "a police officer's observation of significant incriminating behavior on the part of the driver[ ]" would also provide evidence of nexus. *Id.* In cases of aggravated DWI, however, we have concerns about the type of behavior that would allow a reasonably logical inference that a driver had at least a 0.16 BAC at the time of driving, versus some other score. To support a criminal conviction, such an inference must be logical and cannot be just surmise. *Cavanaugh*, 116 N.M. at 829–30, 867 P.2d at 1211–12 (observing that circumstantial evidence can be the foundation of a conviction if the inferences of guilt are based on logic and not just surmise). This issue is not before us today, and we therefore decline to address it in detail. We do question, however, whether a 0.16 BAC can properly be corroborated by behavior evidence alone.

## 2. Standard of Review

{13} When reviewing the sufficiency of evidence to support a conviction, this Court must "resolve all disputed facts in favor of

the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Foster*, 1999–NMSC–007, ¶ 42, 126 N.M. 646, 974 P.2d 140; *accord State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997–NMSC–060, ¶ 27, 124 N.M. 346, 950 P.2d 789. The Court is not required to consider the "merit of evidence that may have supported a verdict to the contrary." *State v. Kersey*, 120 N.M. 517, 520, 903 P.2d 828, 831 (1995) (internal quotation marks and citation omitted). Rather, we must determine whether the evidence presented could justify, to a reasonable mind, a finding that each element of the crime charged has been established beyond a reasonable doubt. *See State v. Coffin*, 1999–NMSC–038, ¶ 73, 128 N.M. 192, 991 P.2d 477; *State v. Salgado*, 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661.

### 3. Analysis

■ {14} A conviction for per se aggravated DWI, under Section 66–8–102(D)(1), requires that the court find beyond a reasonable doubt that Defendant "operated a motor vehicle" and that "[a]t that time[, D]efendant had an alcohol concentration of sixteen one-hundredths (.16) ... or more." UJI 14–4506. In the present case, Defendant does not dispute that she was operating a motor vehicle. The BAC results were 0.17, followed by an invalid sample, which prompted another twenty-minute observation period. The last sample indicated a level of 0.16. The district court convicted Defendant of per se aggravated DWI on the basis of the BAC results.

{15} We next review the evidence in light of a lapse of one hour and twenty-two minutes between the driving and the test results. In *Baldwin*, we found that a lag of more than two hours was significant enough to require additional corroborating evidence to relate a marginal BAC level to the time of driving. 2001–NMCA–063, ¶ 2, 130 N.M. 705, 30 P.3d 394. This Court observed in *Martinez* that

courts having "reversed DWI convictions based upon a lack of relation-back evidence have generally done so when the lapse of time between the time of driving and the time of BAC testing is at least two hours." 2002–NMCA–043, ¶ 12, 132 N.M. 101, 45 P.3d 41. However, in *Baldwin*, we acknowledged the lack of legislative guidance to assist courts in defining the amount of time beyond which a BAC result would no longer be considered prima facie evidence. 2001–NMCA–063, ¶ 19, 130 N.M. 705, 30 P.3d 394.

{16} This Court further addressed the issue in *Christmas*, where we recognized that "both the legislature and our Supreme Court contemplated tolerance of some reasonable and inevitable delay in testing, and intended that otherwise valid test results would be admitted into evidence notwithstanding such a delay." 2002–NMCA–020, ¶ 23, 131 N.M. 591, 40 P.3d 1035. In that case, the delay was less than one hour, and we commented that "[i]t is difficult to envision a reasonable delay of anything less than an hour." *Id.* ¶ 25. Consequently, this Court outlined a "sliding scale" approach for application of the *Baldwin* principles, which included analysis of pertinent factors like "how long ... the delay [is]; how much the BAC test results exceed the statutory limit; and the existence of other corroborating behavioral evidence." *Christmas*, 2002–NMCA–020, ¶ 24, 131 N.M. 591, 40 P.3d 1035. In other words, the greater the inference of guilt, the less need for relation-back evidence. *Id.*

■ {17} In the present case, the delay of one hour and twenty-two minutes is more than the threshold level articulated in *Christmas* but less than the two-hour rule of thumb described in *Baldwin*. The first BAC result was at 0.17, slightly above the statutory limit, and the last result was at the threshold limit of 0.16. Our analysis therefore turns on whether there was sufficient corroborating evidence to lead to a conviction. Defendant argues that the evidence is not sufficient for a conviction on per se aggravated DWI, while the State urges that the evidence meets the *Baldwin* test.

{18} At trial, the Officer testified that after pulling Defendant over, he could smell a "strong odor" of alcohol and noticed that

Defendant's speech was slurred. Defendant admitted that she had been drinking and that she staggered and leaned on the car for support. The Officer administered the finger-count and one-legged-stand field sobriety tests, which Defendant failed. The State, however, did not offer any evidence that this behavior indicated anything more than general intoxication at an unknown level. In fact, Officer Whitman only testified that this behavior indicated to him that "the subject was intoxicated." The State did not provide expert testimony to address the issue, and this Court is not convinced that such behavior evidence is indicative of intoxication at the 0.16 level. In fact, this same behavior matches observations of intoxication at the 0.08 level described in many of our previous cases. *See, e.g., Martinez*, 2002–NMCA–043, ¶¶ 3–5, 132 N.M. 101, 45 P.3d 41; *Christmas*, 2002–NMCA–020, ¶¶ 3–6, 131 N.M. 591, 40 P.3d 1035; *Baldwin*, 2001–NMCA–063, ¶ 4, 130 N.M. 705, 30 P.3d 394.

{19} On balance, with marginal BAC results from a test administered one hour and twenty-two minutes after driving, and without corroborating evidence to substantiate that Defendant was actually driving with a BAC of 0.16 or greater, we reverse the conviction for per se aggravated DWI.

### D. Remand for Entry of Judgment on DWI

{20} Defendant argued that the behavior evidence in this case, while "insufficient to support a conviction for aggravated" DWI, "may be relevant to the question of whether a person was driving while impaired." In closing remarks at trial, Defendant requested a not guilty verdict "or[,] in the alternative[, a holding] that [the State] failed to prove aggravated [DWI] and[, instead,] it's ... non-aggravated [DWI]." We now turn to the question of whether this Court can remand the case to the district court for entry of judgment convicting Defendant of DWI under Section 66–8–102(A), which states that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state."

### 1. Lesser Included Offense

{21} Our courts have determined that under certain conditions a defendant can be convicted of a lesser included offense that was not part of the original charging document. *See State v. Meadors*, 121 N.M. 38, 41, 45, 908 P.2d 731, 734, 738 (1995); *State v. Hernandez*, 1999–NMCA–105, ¶¶ 24–25, 127 N.M. 769, 987 P.2d 1156. In *Meadors*, the New Mexico Supreme Court surveyed the analytical approaches used to determine whether one offense is a lesser included offense of the other. 121 N.M. at 42, 908 P.2d at 735. The *Meadors* Court described the least flexible and most straightforward approach as the "'strict elements'" test. *Id.* Under this test, the "statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible ever to commit the greater offense without also committing the lesser offense." *Id.*

{22} While the Court went on to define a "cognate approach" in order to give flexibility to the "strict elements" test, that approach is unnecessary here because the present case meets the "strict elements" test. Defendant could not have committed per se aggravated DWI without also committing DWI. As this Court has stated, "the offense of aggravated DWI itself is not a different crime [from] DWI, but rather only an enhanced 'degree' of the DWI offense." *State v. Heinsen*, 2004–NMCA–110, ¶ 23, 136 N.M. 295, 97 P.3d 627, *cert. granted*, 2004–NMCERT–008, 136 N.M. 492, 100 P.3d 198. The "strict elements" test is therefore met, and Defendant can be convicted of the lesser included offense of DWI.

### 2. Sufficiency of Evidence for DWI Conviction

{23} While DWI can be proven either through a defendant's alcohol concentration or his/her behavior, we analyze this case under the behavioral prong because we do not need to go further. A conviction for DWI, under Section 66–8–102(A) and UJI 14–4501 NMRA, requires the fact-finder to find beyond a reasonable doubt that Defendant "operated a motor vehicle" and that

[a]t the time, [D]efendant was under the influence of intoxicating liquor[;] that is, as a result of drinking liquor[, D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public.

UJI 14–4501. As we detailed in paragraphs 6 and 18 above, there is substantial evidence that Defendant was driving while intoxicated.

{24} In *State v. Gutierrez*, this Court upheld a bench trial DWI conviction based on behavior evidence alone and stated that the defendant "was not convicted of having a particular blood-alcohol level" but was "convicted of the more general offense of driving while intoxicated." 1996–NMCA–001, ¶ 4, 121 N.M. 191, 909 P.2d 751. In that case, the defendant smelled of alcohol, had bloodshot eyes, failed field sobriety tests, and admitted to drinking alcohol and smoking marijuana. *Id.* In addition, there was evidence that the defendant's vehicle was weaving into other traffic lanes. *Id.* This Court held that even if the BAT card results had not been admissible, the defendant's DWI conviction under Section 66–8–102(A) was fully supported by the "overwhelming" behavior evidence. *Id.* Similar evidence was presented in Defendant's case: Defendant smelled of alcohol, had slurred speech, admitted to drinking alcohol, failed field sobriety tests, and was speeding while driving down the middle of the road. Based on the analysis in *Gutierrez*, we conclude that sufficient evidence existed to find Defendant guilty of the lesser included offense of driving while intoxicated in violation of Section 66–8–102(A).

### 3. Appellate Authority Regarding Lesser Included Offense

{25} The New Mexico Supreme Court has stated that "appellate courts have the authority to remand a case for entry of judgment on the lesser included offense and resentencing rather than retrial when the evidence does not support the offense for which the defendant was convicted but does support a lesser included offense." *State v. Haynie*, 116 N.M. 746, 748, 867 P.2d 416, 418 (1994). In *Haynie*, the Court reversed a conviction for first-degree murder because of insufficient evidence and remanded for entry of judgment and resentencing for the lesser included offense of second-degree murder. *Id.*

{26} In *State v. Villa*, 2004–NMSC–031, ¶ 15, 136 N.M. 367, 98 P.3d 1017, the New Mexico Supreme Court further defined the boundaries for appellate application of the direct-remand rule. The narrow question before that court was "whether, following reversal of a conviction due to insufficient evidence, an appellate court may remand for entry of judgment of conviction and resentencing for a lesser[ ]included offense, where the jury had not been instructed on that lesser offense at trial." *Id.* ¶ 8. No remand for entry of judgment on the lesser included offense of attempt was allowed "because a conviction of an offense not presented to the jury would deprive the defendant of notice and an opportunity to defend against that charge and would be inconsistent with New Mexico law regarding jury instructions and preservation of error." *Id.* ¶ 1.

{27} The present case is distinguishable from *Villa* in several ways. First, *Villa* addressed the direct-remand rule in the context of a jury trial, whereas we are dealing here with a bench trial. In bench trials, we do not look to jury instructions, but rather to the charging document. Second, notice to the defendant of the lesser included charges, as defined by *Meadors*, was a key issue in *Villa*, where both sides pursued an "all-or-nothing trial strategy" and neither the state nor the defendant requested jury instructions on the lesser included offense of attempt. 2004–NMSC–031, ¶¶ 12, 14, 136 N.M. 367, 98 P.3d 1017 (internal quotation marks omitted). Here, as described above, there was sufficient notice under *Meadors*, given that aggravated DWI necessarily encompasses the lesser included charge of DWI. Additionally, Defendant requested that the district court consider the lesser charge of DWI, thus indicating her awareness that the lesser charge was included.

{28} Last, the *Villa* Court was concerned that even if notice had been adequate, there would be a problem with convicting the defendant of a charge that "he did not in fact

defend at trial." 2004–NMSC–031, ¶ 13, 136 N.M. 367, 98 P.3d 1017. The defendant in that case was not given an opportunity to provide evidence that addressed the elements of the lesser charge. *Id.* Unlike the defendant in *Villa*, Defendant in the present case offered a defense to evidence of her impaired behavior. Cross-examination of Officer Whitman elicited testimony that Defendant's speech was understandable, and the Officer was also questioned as to whether he actually administered one of the field sobriety tests. Although Defendant apparently conceded by the end of the trial that the behavior evidence did support a finding of impairment, the record demonstrates that some defense was presented.

{29}   The *Villa* Court observed that "[i]n deciding whether direct remand is appropriate[,] . . . the inquiry is whether the interests of justice would be served by ordering a new trial." *Id.* ¶ 9. The Court cited *Haynie* as an example of a case where the interests of justice would not have been served by remanding for a new trial. *Villa*, 2004–NMSC–031, ¶ 9, 136 N.M. 367, 98 P.3d 1017. The Court found it significant that the defendant in *Haynie* had argued for conviction on a lesser offense and that the jury was provided with the proper instructions on that offense. *Villa*, 2004–NMSC–031, ¶ 9, 136 N.M. 367, 98 P.3d 1017. As in *Haynie*, Defendant here argued for conviction on the lesser offense. Jury instructions were not given because Defendant's conviction was based on a bench trial. Consequently, the interests of justice would not be served by remanding this case for retrial. We therefore remand to the district court for entry of judgment against Defendant for DWI under Section 66-8-102(A).

### E.   Certification of the BAC Machine

{30}   Defendant also argues that the State failed to provide evidence of the BAC machine's certification and thus did not lay a proper foundation for admission of the BAC results. Given that our remand is based on non-per se DWI, we do not rely on the BAC results; therefore, there is no need to evaluate the admission of this evidence. We reach no conclusion on the merits of Defendant's argument on this issue.

### III.   CONCLUSION

{31}   We affirm the district court's denial of the motion to suppress on the ground that the Officer had reasonable suspicion to stop Defendant's car. Lacking sufficient corroborating evidence to substantiate that Defendant was driving with a BAC of 0.16 or greater, we reverse the conviction for per se aggravated DWI and remand this case for entry of judgment and sentencing on a charge of simple DWI.

{32}   **IT IS SO ORDERED.**

FRY, J., concurs.

ROBINSON, Judge (specially concurring).

ROBINSON, Judge (specially concurring).

{33}   I agree with the result reached by the majority. I do not agree with the way it was reached.

{34}   The majority bases its affirmance of Defendant's DWI conviction on so-called behavioral evidence alone, forsaking the BAC evidence. I am troubled by that.

{35}   I have no doubt that the reason the legislature passed the Implied Consent Act, NMSA 1978, §§ 66-8-105 to—112 (1978, as amended through 1993), was to give some consistency, objectivity, and standardization to DWI enforcement and prosecution.

{36}   If we rely upon field sobriety tests alone as the majority does here, administered by different police officers in each and every case, we sacrifice objectivity, consistency, and standardization. What may seem to be a "strong" odor of alcohol on a driver's breath to one police officer, may not be strong to another police officer. What may seem to be "bloodshot" eyes to one officer, may look less so, or not at all, to another officer. What may seem to be "slurred" speech to one officer, may not to another officer, especially if the individual speaks with a foreign accent, or if for any reason whatsoever it is difficult to understand what he is saying.

{37}   This Court considered a DWI case where a police officer testified that the defendant refused to participate in the field sobriety tests requested by that officer, thus imputing consciousness of guilt to the defendant.   The officer did not tell the court, as was later evidenced by a videotape taken by the officer, that the defendant had a brace on his leg.   So much for objectivity!   *See State v. Sanchez*, 2001–NMCA–109, 131 N.M. 355, 36 P.3d 446.

{38}   For many years, one of the most often used field sobriety tests was the Horizontal Eye Gaze Nystagmus Test, commonly referred to as the HGN Test. Recently, this Court has questioned its scientific validity under a *Daubert* analysis.   *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also State v. Munoz*, 2004–NMCA–103, 136 N.M. 235, 96 P.3d 796.

{39}   The arresting officer testified that he checked the logs to determine that the machine had been calibrated within five days prior to his administration of the test and that the logs showed that the machine was in working order.   He also explained that the machine appeared to be in working order, that he was trained in using the machine, and that he administered the test according to his training, thus satisfying the foundational requirement of *State v. Smith*, 1999–NMCA–154, ¶ 10, 128 N.M. 467, 994 P.2d 47.

{40}   *State v. Onsurez*, 2002–NMCA–082, 132 N.M. 485, 51 P.3d 528, was decided several months after this case.   It held that the State must show that a breathalyzer machine has been certified by the State Laboratories Division "in cases where the defendant properly preserves the objection." *Id.* ¶ 13.   In order to preserve an issue for appeal, a party must make a timely objection that specifically apprises the trial court of the error that is claimed and invokes an intelligent ruling thereon from the court.   *See State v. Jacobs*, 2000–NMSC–026, ¶ 12, 129 N.M. 448, 10 P.3d 127.   Here, Defendant did not properly preserve her objection.

{41}   I agree with the State that the breathalyzer machine was properly used, and the evidence of the breath test, while not reliable to show aggravated DWI, does show

at least a BAC 0.08 level for simple DWI. I do not feel confident resting a conviction on field sobriety tests alone.   I would rely also on the BAC results.

{42}   The majority relies on *Gutierrez* for a conviction in our case based upon behavioral evidence.   But, in *Gutierrez*, there was evidence that Defendant was weaving into other traffic lanes, and Defendant narrowly missed hitting a truck.   Defendant smelled of alcohol and had bloodshot, watery eyes; Defendant also failed three field sobriety tests; and Defendant admitted drinking alcohol and smoking marijuana.   From this evidence, the officers concluded that Defendant was intoxicated.   1996–NMCA–001, ¶ 4, 121 N.M. 191, 909 P.2d 751. In our case, the behavioral evidence is not as strong or convincing as in *Gutierrez*.

{43}   Under the facts of this case, there are essentially two ways for Defendant to be convicted of simple, not aggravated, DWI. One way that Defendant could be convicted of DWI is to be in violation of Section 66–8–102(A), which states that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." *Id.* This violation could be demonstrated by behavioral evidence of the physical appearance, actions, and mannerisms displayed by Defendant at the time of arrest. The second way that Defendant could be convicted of DWI is for a violation of Section 66–8–102(C)(1), which states that it is unlawful for "a person who has an alcohol concentration of eight one hundredths or more in his blood or breath to drive a vehicle within this state." *Id.*

{44}   I would first note that if the majority found a level of at least 0.08, no behavioral evidence is necessary to support it since that constitutes a presumption of guilt for DWI. However, Section 66–8–110 states:

B.   When the blood or breath of the person tested contains:

    . . . .

    (2) an alcohol concentration of more than five one-hundredths but less than eight one-hundredths, no presumption shall be made that the person either was or was not under the influence of intoxi-

cating liquor. However, the amount of alcohol in the person's blood may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor. § 66–8–110(B)(2). We have a different situation here. If Defendant had a breath alcohol test result of 0.04 to 0.08, there is no presumption one way or the other. But, under this subsection, "the amount of alcohol in the person's blood may be considered *with other competent evidence* in determining whether the person was under the influence of intoxicating liquor." *Id.* (emphasis added).

{45} So, when a defendant is in that middle range of BAC, 0.04 to 0.08, the statute invites us to add other kinds of evidence, like slurred speech, bloodshot eyes, stumbling, or the results of field sobriety tests, to the BAC results, in order to determine if Defendant was driving while intoxicated. There is nothing in the statutes that would prevent us from adding behavioral evidence to a BAC of 0.08, especially if Defendant has presented evidence to challenge the level of intoxication. Furthermore, there was neither a refusal to take the breathalyzer test, nor an accident which could justify an aggravated DWI.

{46} Since the majority has reduced the level or degree of conviction from aggravated, down to simple DWI based upon blood/breath alcohol (BAC) level, it seems to me that they cannot disregard BAC evidence and analyze the case only on behavioral evidence.

{47} A BAC level of at least 0.08 for simple DWI is indeed a lesser included offense of aggravated DWI, which requires a BAC of at least 0.16. There cannot be any aggravated DWI based upon behavioral evidence alone. How can we then conclude that simple DWI based upon behavioral evidence is a lesser-included offense of aggravated DWI based upon a specific BAC level of at least 0.16?

{48} I would not rely upon behavioral evidence alone, which is just too subjective to receive my stamp of approval. I, therefore, combine the behavioral evidence with the "reduced" BAC level of 0.08 to reach an affirmance of Defendant's conviction of the lesser included offense of simple DWI.