This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

v.                                    **NO. 29,536**

**BEVERLY ROMERO,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, District Public Defender
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

       Defendant appeals from the district court's judgment on on-record metropolitan court appeal, which affirmed the metropolitan court's sentencing order convicting

Defendant, after a bench trial, of DWI (first offense), speeding, no proof of insurance, and failure to maintain lane. RP 101] Defendant raises three issues on appeal, contending that: (1) Defendant's arrest was illegal, having been made without probable cause; (2) the district court abused its discretion in admitting the breath card upon insufficient evidence to establish compliance with the SLD regulation requiring proof of air blanks between samples tested–a regulation relating to the accuracy of the breath machine; and (3) the trial court erred in convicting Defendant when there was insufficient evidence to establish beyond a reasonable doubt that her driving was impaired. [DS 23]

This Court's calendar notice proposed summary affirmance. Defendant has filed a memorandum in opposition that we have duly considered. We affirm.

**Issue 1 - Probable Cause to Arrest Defendant**

"When we apply the] probable cause test on appeal, we review the district court's determination as a question of law, and as such, de novo." *State v. Sales*, 1999-NCA-099, ¶ 11, 127 N.M. 686, 986 P.2d 482. "However, we defer to the fact finder for the factual determination of conflicting facts and use those facts to address the legal issues." *Id.*

In the memorandum, Defendant continues to argue that the State failed to establish probable cause to arrest her because the State cannot show that Defendant's faulty performances on the field sobriety tests (FST) were the result of Defendant's

being under the influence of alcohol rather than her medical conditions. [MIO 23] Defendant contends that her various medical conditions made the FST inappropriate for her. [MIO 24-25] She argues that the totality of the evidence does not lead to an objectively reasonable belief that Defendant was impaired by alcohol. [MIO 25] We are not persuaded.

In the memorandum, Defendant confirms the facts this Court relied upon in affirming the metropolitan court's determination that the investigating officer had probable cause to arrest Defendant. [MIO 2, 3-18] The officer testified that while traveling south on I-25 at about 12:37 a.m. on December 15, 2006, he observed Defendant, who was driving a Ford Escort in the center lane, weave back and forth, crossing into the other lanes on both sides. [DS 3; MIO 2] At the San Mateo exit, Defendant's vehicle cut over multiple lanes of traffic to get into the far right lane at the last second. [Id.] The vehicle was speeding, going 80 miles per hour in a 65 mile-per-hour zone, as evidenced by the officer's radar. [DS 3; MIO 2; RP 7, 9] When the officer approached Defendant, he told her why he stopped her and requested her driver's license and other paper work. [DS 3; MIO 2] Defendant did not have proof of insurance. [Id.] As he spoke to Defendant, the officer noticed a strong odor of alcohol, and Defendant's eyes were obviously watery and quite bloodshot. [Id.] Defendant admitted to drinking alcohol. [MIO 3]

With regard to Defendant's performance on the FST, the officer testified that

there was no inclement weather, the tests were performed at an intersection with overhead lighting, Defendant did not have the type of shoes that would impede her performance, and the tests were performed on flat pavement without obstacles. [DS 5, 10; MIO 4] The officer testified that he noticed a distinct and strong odor of alcohol while he was administering the horizontal gaze nystagmus test; and Defendant's eyes were obviously watery, similar to being glassed over, and she had a slight sway. [MIO 4-5] Prior to administering the walk and turn test, the officer asked Defendant if she had any physical injuries that would hinder her and if she had any problem with her legs, and he testified that she said that she did not. [MIO 5] During these test, Defendant stepped off the line and raised her arms, swayed, and put her foot down. [MIO 6] The officer also administered alternative tests due to Defendant's short stature and weight. [DS 7, 10, MIO 6] During the finger dexterity test, Defendant was unable to follow directions; she also had difficulty counting and reciting the alphabet as instructed. [MIO 6-7] The metropolitan court judge viewed the video recording of Defendant performing the FST and the alternate FST. [DS 22, MIO 7-8] The metropolitan court judge noted that the video recording shows that Defendant stumbled and swayed throughout, and that she had distinct and noticeable difficulties following directions in a way that indicated impairment by alcohol. [DS 22]

Defendant testified that she was going 70, not 85 when she was stopped, and

the she was not straddling the divider lines. [MIO 13]  While Defendant testified that her performance on the FST should be discounted because of her medical conditions, including Turner and Silver Syndromes, Defendant did not reveal impeding medical conditions to the officer at the time of the FST, other than that she had diabetes.  [DS 5, 8, 11; MIO 14-15] On cross-examination, Defendant acknowledged that she did not tell the officer that she had a headache, felt groggy or unwell, and she did not tell him that she had Turner Syndrome or Silver Syndrome.  [DS 15; MIO 15]

Under the circumstances of this case, we hold that the metropolitan court could reasonably conclude that, based on the evidence available to the officer at the time of Defendant's arrest, there was probable cause to support Defendant's arrest for DWI. [MIO 16]  *State v. Hernandez*,  1997-NCA-006, ¶ 27, 122 N.M. 809, 932 P.2d 499 ("'Probable cause exists when the facts and circumstances within the officers [sic] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed.'") (quoting *State v. Blea*, 88 N.M. 538, 540, 543 P.2d 831, 833 (Ct. App. 1975)).  In addition, we note that the metropolitan judge indicated that he did give some weight to Defendant's testimony concerning her medical conditions as having diminished Defendant's physical capabilities on the FST.  [DS 21]  The metropolitan court judge also indicated that what he saw on the video indicated that Defendant was impaired by alcohol.  [DS 22]   While Defendant

5

swayed and stumbled throughout, she also had distinct and noticeable difficulties following directions in a way that indicated impairment by alcohol. [Id.] Defendant was found guilty under the impaired-to-the-slightest-degree DWI standard rather than under the *per se* DWI standard. [Id.]

**Issue 2 - Admission of the Breath Card**

"We review rulings upon the admission or exclusion of evidence under an abuse of discretion standard, . . . but when there is no evidence that necessary foundational requirements are met, an abuse of discretion occurs." *State v. Gardner*, 1998-NCA-160, ¶ 5, 126 N.M. 125, 967 P.2d 465 (citation omitted).

In the memorandum, Defendant confirms the facts this Court relied upon in the calendar notice on this issue. [MIO 17-19] The arresting officer testified that the Breathalyzer test was performed approximately an hour after Defendant's arrest; the officer inspected Defendant's mouth to make sure it was clear; he handcuffed Defendant and placed her in the back of his police vehicle for the 20-minute waiting period. [DS 18-19; MIO 17-19] After the 20-minute period, at the station, the officer read Defendant the New Mexico Complied Consent Advisory, and he testified that Defendant seemed to understand the advisory and did not ask for an independent test. [DS 18; MIO 17] The officer testified to using an IR 8000 breath test machine. [Id.] The officer testified that he is a key operator and certified to use it. [DS 19; MIO 17, 18] The officer also testified that the machine was working on that night; he

6

regularly checks its calibration; the SLD certificate was up-to-date; and Defendant's test fell within the validity dates on the SLD certificate. [DS 18; MIO 17-18] The officer further testified to using a clean mouthpiece, and he identified the breath card test results with his signature on it from the date of Defendant's test. [DS 18-19; MIO 18] Finally, the officer testified that Defendant was able to provide two valid samples, after which Defendant was booked into jail. [DS 19]

On appeal, Defendant contends that the foundation requirement for admission of the breath card was deficient because testimony about the performance of air blanks, as crucial to the accuracy of the breath test, was necessary. The memorandum states that Defendant objected that there was no testimony about air blanks, nozzles, or clean mouth pieces. [MIO 19] Assuming this was sufficient to preserve the issue for appeal, the officer's testimony that he is the key operator and that the IR 8000 was properly working was sufficient to establish proof of air blanks between the samples tested. *See* 7.33.2.10(B)(2)(a) (stating that a minimum requirement for operation of a breath alcohol testing instrument is a system blank analysis preceding each breath sample). We therefore conclude that there was not abuse of discretion by the metropolitan court in admitting the breath alcohol test result into evidence in the bench trial, and that the district court correctly affirmed the metropolitan court under this claim of error.

**Issue 3 - Sufficiency of the Evidence to Show Impairment**

7

"Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NCA-134, ¶10, 140 N.M. 606, 145 P.3d 86 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (quoting *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776). The appellate court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994).

In order for the metropolitan court judge to find Defendant guilty of driving while under the influence of intoxicating liquor, the State was required to prove to the satisfaction of the metropolitan court judge beyond a reasonable doubt that Defendant "operated a motor vehicle" and that,

> [a]t the time, [D]efendant was under the influence of intoxicating liquor[;] that is, as a result of drinking liquor[, D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public.

UJI 14-4501 NMRA.

In the memorandum, Defendant continues to argue that there was insufficient evidence to establish that she was impaired by alcohol. [MIO 30] She points out that the odor of alcohol alone is not enough to establish impairment, and that her faulty performance on the FST is explained by her medical conditions. [Id.] Defendant continues to argue that substantial evidence does not support a finding, beyond a reasonable doubt, that Defendant's ability to operate a vehicle was impaired "to the slightest degree" by alcohol. [MIO 33] We are not persuaded.

In this case, the officer's observations of (a) Defendant's erratic driving, including weaving and crossing in and out of the center lane, speeding, and crossing multiple lanes to exit; (b) Defendant's physical signs of intoxication; (c) Defendant's admission to drinking; and (d) Defendant's failure to perform the FST and the alternate FST in accordance with the officer's instructions as indicated in the officers testimony and observed by the metropolitan court judge in the video, together provide substantial evidence to support Defendant's conviction for DWI. *See, e.g., State v. Notah-Hunter*, 2005-NCA-074, ¶ 23, 137 N.M. 597, 113 P.3d 867 (recognizing that "DWI can be proven either through a defendant's alcohol concentration or his/her behavior"); *see also id.* ¶ 24 (holding that substantial evidence supported the defendant's conviction under Section 66-8-102(A) where the defendant "smelled of alcohol, had slurred speech, admitted to drinking alcohol, failed field sobriety tests, and was speeding while driving down the middle of the road").

Defendant's testimony contradicted the officer's observations. She offered contrary explanations for her performance on the FST and the alternate FST. In fact, as discussed above, the metropolitan court judge indicated that he took Defendant's medical conditions into account in deciding to convict Defendant of "slightest degree" DWI rather than *per se* DWI. Under the circumstances, however, it is well-established that "[t]he reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789. Moreover, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the [fact finder] is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

We affirm Defendant's conviction for DWI as supported by substantial evidence.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**RODERICK T. KENNEDY, Judge**

11