This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40062**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MATTHEW S. BAISLEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison, Hart & Davis, LLC
Daniel J. Gallegos
Nicholas T. Hart
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Matthew Baisley appeals his jury conviction for attempted first degree murder, contrary to NMSA 1978, Section 30-28-1 (1963), and NMSA 1978, Section 30-2-1(A)(1) (1994); and aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963). Defendant appeals, arguing that several district court rulings prevented meaningful presentation of his defense, including exclusion of an

expert as a discovery sanction, denial of a continuance to call an unsubpoenaed witness, and an order prohibiting testimonial hearsay on Defendant's blood alcohol content (BAC) level through an expert. Moreover, Defendant argues that counsel was ineffective in failing to secure a toxicology expert for trial, and that his conviction was unsupported by sufficient evidence with respect to the intent requirement. We affirm.

**BACKGROUND**

**{2}** The night of the assault, Defendant was staying with his mother following a period of estrangement. Defendant ate dinner with his mother and brother, after which his brother retired to his room while Defendant and his mother stayed up talking about "current events." Defendant's brother later awoke to yelling in the kitchen, which upon investigation, revealed blood on the floor and Defendant crouched over his mother, who was holding her throat. Defendant, armed with a knife, chased his brother while telling him not to call 911. The brother was able to escape when Defendant stumbled, then fled the house and alerted law enforcement.

**{3}** At trial, a responding officer testified that he found Defendant's mother in the back yard with a knife sticking out of her upper back, lower neck area. The officer detained Defendant, who was compliant, and transferred him to the Alamogordo Police Department. The officer noted Defendant smelled of alcohol and appeared to be under the influence, which Defendant later testified was the result of having consumed wine and a combination of vodka mixed with Hawaiian punch. While being processed and photographed at the police station, Defendant commented unsolicitedly that he "must be the world's worst murderer." Subsequent inspection of the house revealed blood splatters throughout the kitchen and dining room, and alcohol in two of the cups sitting on the dining room table. Defendant's mother sustained over thirty stab wounds and could not speak or walk for some time following the attack, but she later recovered and was able to testify at trial. Defendant testified that he had no recollection of events having taken place between speaking amicably with his mother and being in the police car.

**{4}** Before trial, the district court entered a scheduling order requiring the disclosure of discovery and a final witness list no later than 3:00 p.m. on the day before the jury trial scheduled for July 2020. The order indicated in bold text that "[f]ailure to timely file a final trial exhibit and witness list will result in exclusion of exhibits and/or witnesses." Following an unopposed continuance, the district court ordered Defendant to file his witness list by September 14 and the State to file any final witness list by September 28. Defendant then moved for another continuance in late October to procure more expert witnesses, which the State opposed citing the previous continuance as well as the emotional toll the wait was having on Defendant's mother. Following a hearing, the district court issued a final scheduling order on November 9 that required Defendant to identify a toxicology expert by December 4 and to disclose the toxicology expert witness report by January 2. On December 3, Defendant filed a motion requesting additional time to find an expert, but on the following day Defendant filed a second amended witness list naming a toxicologist. At a subsequent hearing in January, Defendant

indicated that counsel had spoken with the proposed toxicologist and provided additional information at his request the following day, but they had not agreed to a contract nor had the toxicologist responded to the follow-up information in the intervening month. No toxicology expert witness report was ever disclosed. In a written order issued January 20, 2021, the district court determined that the appropriate sanction would be to exclude the proposed toxicologist and any other toxicologist employed by the defense from the upcoming April 5, 2021 trial.

{5}     Lastly on April 2, 2021, Defendant moved to vacate the trial date to subpoena the State's toxicology expert after the State indicated that it would not be calling that expert to testify to Defendant's BAC on the night of the attack. The State indicated to defense counsel that it had previously debated whether to call its toxicologist as a matter of trial strategy, and therefore was unconcerned when the toxicologist was ultimately unavailable for trial due to a family emergency out of the country. The district court denied Defendant's motion as Defendant had not named the State's toxicologist as an expert on his own witness list, and therefore was not entitled to subpoena that expert at such a late hour. Moreover, the district court noted that the factors to consider in granting a continuance, as enumerated in *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20, did not favor granting the continuance.

{6}     Trial commenced, during which the State moved to exclude discussion of Defendant's BAC toxicology results from the night of the attack as no expert was available to discuss the accuracy of the testing. Outside the presence of the jury, the district court ruled that Defendant's forensic psychology expert could testify that Defendant was drunk, and moreover, that his opinion was based on a toxicology report that indicated alcohol was in Defendant's bloodstream, but the expert was not permitted to testify to a numeric BAC value. The jury therefore heard Defendant's expert's opinion that Defendant could not form an intent to kill while blacked out due to alcohol consumption, and the State's expert's opinion that Defendant could still form an intent to kill even in an alcoholic blackout, as evidenced by Defendant's demonstrated awareness of the circumstances surrounding the assault. Defendant was found guilty of attempted first degree murder and aggravated assault with a deadly weapon.

**DISCUSSION**

**I.     Exclusion of Toxicology Expert**

{7}     Defendant first argues that the district court, in excluding his toxicology expert as a discovery sanction, failed to properly consider all the factors required to exclude a witness under *State v. Le Mier*: "culpability, prejudice, and lesser sanctions." 2017-NMSC-017, ¶ 20, 394 P.3d 959. "The propriety of a trial court's decision to exclude or not to exclude witnesses is reviewed for abuse of discretion." *Id.* ¶ 22. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it

as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{8}** Though the district court's January 20, 2021 order did not provide individualized headings as to each *Le Mier* factor, the court's findings do address each component of the analysis. To culpability, the district court observed Defendant's multiple prior opportunities to procure a witness and Defendant's failure to do so by extended deadlines. To prejudice, the district court found that both the State and the court were prejudiced by the delay and failure to disclose the expert opinion report that had "never been authored." The district court noted that well after a month past the deadline to secure an expert, the purported toxicologist had yet to be hired or produce a report. As to lesser sanctions, the district court noted—as was the case in *Le Mier*, *see id.* ¶ 28— that previous extensions of time had been afforded to Defendant and that exclusion came only after those opportunities were exhausted fruitlessly.

**{9}** We discern no error in the district court's analysis under *Le Mier*. "[T]he district court was not obligated to consider every conceivable lesser sanction before imposing witness exclusion." *Id.* ¶ 27. Especially as Defendant had failed to procure any toxicology expert and accompanying report within the well-defined scheduling deadlines, we are unpersuaded the district court abused its discretion in excluding any potential toxicology experts, including the one identified by Defendant, given the looming trial date and Defendant's repeated failure to secure such an expert.

## II.    Denied Continuance

**{10}** Defendant also argues that the district court erred in denying him a continuance to subpoena and secure the attendance of the State's toxicology expert on the eve of trial once he became aware the State would not call her. "The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, and the burden of establishing an abuse of discretion rests with the defendant." *Torres*, 1999-NMSC-010, ¶ 10 (internal quotation marks and citation omitted).

> There are a number of factors that trial courts should consider in evaluating a motion for continuance, including [(1)] the length of the requested delay, [(2)] the likelihood that a delay would accomplish the movant's objectives, [(3)] the existence of previous continuances in the same matter, [(4)] the degree of inconvenience to the parties and the court, [(5)] the legitimacy of the motives in requesting the delay, [(6)] the fault of the movant in causing a need for the delay, and [(7)] the prejudice to the movant in denying the motion.

*Id.*

**{11}** The factors delineated in *Torres* do not favor Defendant's continuance request. The requested delay was for an unspecified amount of time until the State's toxicologist returned to the country after handling a family emergency. Such a length of time could

delay trial significantly. We agree with the district court that further delay would likely secure the toxicologist's attendance at trial, but the other factors weigh against granting the motion, such as the several other previous delays that had postponed trial, the significant inconvenience of continuing trial the day beforehand, and the relative weakness of Defendant's claimed need to examine a witness he had not subpoenaed. The district court was not persuaded "that there is a legitimate motive for requesting a continuance." Defendant contends that in making this determination, "the district court overlooked the importance of toxicology evidence to [his] lack of capacity defense." Upon careful review of the record, we are unpersuaded that Defendant has carried his burden that the district court erred in this determination. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that we presume correctness in the trial court's rulings and the burden is on the appellant to demonstrate trial court error). As for prejudice, while the exact BAC toxicology report and the toxicologist's related opinions could not be presented to the jury, circumstantial evidence, Defendant's own admissions, and the testimony of his forensic psychology expert established that Defendant was thoroughly inebriated when undertaking the actions for which he was convicted. We conclude the district court's denial of Defendant's motion was not an abuse of discretion.

### III.  Prohibited Hearsay Testimony About BAC

**{12}**    Defendant next argues that the district court erred in excluding any mention of his BAC toxicology results during testimony by Defendant's forensic psychology expert. Defendant insists that the BAC level was relied on by his forensic psychologist in forming his expert opinion, which in turn should be admissible under Rule 11-703 NMRA. "We review the admission of evidence pursuant to an exception or an exclusion to the hearsay rule under an abuse of discretion standard by which deference is given to the district court's ruling." *State v. Largo*, 2012-NMSC-015, ¶ 22, 278 P.3d 532.

**{13}**    Rule 11-703 states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." The expert may rely on inadmissible facts and data to form their opinion, and "the proponent of the opinion may disclose [the inadmissible evidence] to the jury only if [its] probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." *Id*. Defendant maintains his BAC level would have been particularly probative as to his ability to form a requisite intent while it provides little prejudice to the State.

**{14}**    Under the circumstances of this case, we disagree. Defendant's forensic psychology expert was permitted to testify to his opinion—that Defendant was blacked out consistent with the theory of defense—and that his opinion was based on a toxicology report. In this case, the probative value of the numerical BAC reading without context from an expert able to discuss the meaning of the value is slight. As the district court also correctly observed, the jury would be hearing a BAC number lacking verification for when the blood draw was done, whether there was a proper chain of custody for the sample, or whether the test was done in compliance with proper procedures. As the jury would have no indication that the number itself was reliable—or

what the number means in a practical sense—we share the district court's concern that it would more likely confuse issues and possibly lead to misuse by the jury. To reiterate, Defendant was still able to present his expert's opinion that Defendant had blacked out, eliminating his ability to form intent, into evidence. We disagree with Defendant that Rule 11-703 operated to compel admission of his BAC at trial.

## IV.     Ineffective Assistance of Counsel

**{15}**     Defendant argues that his trial counsel provided ineffective assistance by failing to retain a toxicology expert or subpoena the State's expert to ensure her attendance at trial. "We review claims of ineffective assistance of counsel de novo." *State v. Miera*, 2018-NMCA-020, ¶ 30, 413 P.3d 491 (internal quotation marks and citation omitted). "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *Id.* (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.*

**{16}**     Having reviewed the trial record, we are unpersuaded on direct appeal that Defendant was prejudiced by ineffective assistance of his trial counsel. Critical to Defendant's theory of the case, Defense counsel did ensure that a forensic psychologist expert appeared and testified that Defendant was suffering from a blackout due to alcohol intoxication at the time of the attempted murder and was, therefore, incapable of forming the requisite intent to kill. From the record on appeal, we conclude that Defendant has not presented a prima facie case of ineffective assistance of counsel such as to warrant a remand for an evidentiary hearing.

## V.     Sufficiency of the Evidence

**{17}**     Lastly, Defendant argues that the evidence presented was insufficient to prove that he acted with a deliberate intent to kill. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{18}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. In this case, the jury instruction instructed them to find Defendant guilty if (1) Defendant intended to kill his mother, (2) he had the deliberate intention to take away his mother's life, and (3) Defendant was not so intoxicated at the time of the offense "to the extent of being incapable of forming an intention to kill." Defendant's argument focuses on the second element, the deliberate intent to kill.

**{19}** The jury heard from Defendant's expert who opined that Defendant could not form an intent to kill while blacked out, and they heard from the State's expert who opined Defendant could still form an intent as demonstrated by Defendant's own actions and awareness at the time of the assault. The jury likewise heard evidence that the knife Defendant used in the attack was from a knife block several feet away in the kitchen, which required Defendant to walk around a peninsula counter to the knife block and back to his mother before attacking her with the knife he retrieved. Defendant's brother testified that Defendant communicated to him that he should not call the police, from which the jury could reasonably infer that Defendant knew the nature of the situation and was aware of his criminal behavior. Responding officers found the knife in Defendant's mother's neck after chasing his brother with it, indicating he returned deliberately to attack his mother again after the initial assault in the kitchen. *See State v. Baca*, 2019-NMSC-014, ¶ 26, 448 P.3d 576 (determining a deliberate intent to kill was supported by blood splatter analysis indicating the victim changed positions over "a prolonged, sustained attack"). Defendant even commented during booking on the failed nature of his effort to murder his mother. Considering the foregoing, we hold sufficient evidence was presented to the jury such that they could reasonably infer that Defendant deliberately intended to kill his mother.

**CONCLUSION**

**{20}** For the foregoing reasons, we affirm.

**{21}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**GERALD E. BACA, Judge**